UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MCCULLOUGH,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security<br><br>    Defendant. | Case No.  2:21-cv-02099-JDP (SS)<br><br>ORDER GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 11 & 12 |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have moved for summary judgment. ECF Nos. 11 & 12.  The court denies plaintiff's motion for summary judgment and grants the Commissioner's motion.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

1

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed his application for a period of disability and DIB on May 1, 2019, alleging disability beginning January 24, 2019. Administrative Record ("AR") 206-09. After his application was denied initially and upon reconsideration, plaintiff appeared and testified at a hearing before an ALJ. AR 33-65, 101-05, 108-12. On December 23, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 19-28. Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since January 24, 2019, the alleged onset date.

* * *

   3. The claimant has the following medically determinable impairments: arthritis; unspecified personality disorder; unspecified depressive disorder; unspecified anxiety disorder; adjustment disorder with anxious or depressed mood.

   \* \* \*

   4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

   \* \* \*

   5. The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2019, through the date of this decision.

AR 22-28 (citations to the code of regulations omitted).

Plaintiff's request for review by the Appeals Council was denied. AR 1-3. He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that the ALJ's determination that he does not have a severe mental impairment is not supported by substantial evidence. ECF No. 11-1 at 6.[1] As part of this argument, he argues that the ALJ improperly relied on evidence of his daily activities and improperly rejected the opinion of a consultative medical examiner. *Id.* at 6-12. I find that the ALJ's conclusion was adequately reasoned and supported by substantial evidence.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ determines which of the claimant's alleged impairments are "severe"; a "severe" impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination

---

[1] Plaintiff does not challenge the ALJ's ruling that his physical impairments were non-severe. *See* ECF No. 11-1.

3

of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

At step two, the ALJ thoroughly evaluated the record evidence and determined that plaintiff's diagnoses of generalized anxiety disorder and major depressive disorder were not severe impairments. AR 25-27. ALJs use a five-point scale—none, mild, moderate, marked, and extreme—to evaluate the degree of limitation imposed by mental impairments in each of four broad functional areas: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. §§ 404.1520a(c), (d). Impairments that impose only mild limitations will generally be found non-severe. *See id.* § 404.1520a(d)(1). Using this approach, the ALJ found that plaintiff has no limitation in adapting and managing himself and mild limitations in the other three areas. AR 25-26.

The ALJ supported these findings in part by explaining that plaintiff has received almost no treatment for his alleged mental impairments. AR 25-26. On January 24, 2019—the alleged onset date—plaintiff told a medical provider that he had been involved in an altercation with a co-worker the previous night and that he had been experiencing anxiety since the incident. AR 344. He denied suicidal or homicidal intent, and he was not prescribed medication. AR 344-47. The record contains no other medical records, and plaintiff testified that he has received no treatment for his alleged mental impairments. AR 60.

The ALJ also observed that plaintiff's activities of daily living were not commensurate with allegations of severe mental impairments. In his function report, plaintiff indicated that he pays bills and handles his own finances, that he shops for himself, goes outside daily, prepares his own meals, and cleans and does laundry. AR 254-55. At the hearing, he added that he does chores around his son's home—where he now lives—including picking up the mail, mowing the lawn, washing the dishes, and cleaning the floors. AR 59-60. As for his hobbies, he stated that he likes "doing model cars and trains" and that he used to go fishing. AR 55.

Plaintiff argues that his activities are not so extensive that they undermine his allegations, and that it was error for the ALJ to rely on them. ECF No. 11-1 at 7. He argues that evidence of

his ability to do some household chores is not determinative of disability and that he elsewhere described very limited daily activities, such as watching television all day. AR 253. "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings related to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Although I am mindful of the Ninth Circuit's admonition, I find no error here. Unlike cases in which the ALJ uses evidence of daily activities to discredit a claimant's testimony that his symptoms impose severe limitations, the ALJ in this case broadly credited plaintiff's symptom testimony. Indeed, plaintiff's testimony does not appear to describe a severe impairment. He testified that his depression and anxiety were "not too bad" and that he "pretty much [has] control over" his anxiety and stress. AR 50-51. In response to a question about his ability to concentrate, he testified that "it's a little tough" but "okay." AR 51. On his function report, he indicated that he is "good" at handling changes in routine and getting along with authority figures. AR 258.

The ALJ's findings on plaintiff's functional capacity, based in part on plaintiff's activities of daily living, are consistent with this symptom testimony and with other evidence in the record. The ALJ reasonably observed that plaintiff's personal care activities—dressing, bathing, and grooming himself, cooking for himself and his son, and performing regular chores around his son's house—support a finding that he has no limitation in adapting or managing oneself. AR 26. Similarly, the ALJ found that plaintiff's ability to manage money and engage in hobbies like "model trains and cars" support a finding of mild limitations in remembering or applying information and in concentrating, persisting, or maintaining pace. AR 25. The ALJ also explained that his ability to shop for himself and the absence of any apparent issues with his children—with whom he now lives—demonstrate his ability to interact with the public and get along with others. AR 25. Moreover, none of the ALJ's conclusions rely solely on plaintiff's activities of daily living. In considering plaintiff's ability to interact with others, the ALJ weighed plaintiff's lone work-related altercation against evidence that plaintiff was "cooperative, with no

5

1   bizarre behavior" at his consultative exam and against the absence of any other evidence of
2   limitations. AR 25.
3         In the face of significant contrary symptom testimony or substantial medical evidence of a
4   severe impairment, these notes might not be sufficient. However, "[t]he claimant carries the
5   initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d
6   at 679. In this case, in which plaintiff provided little evidence beyond his own testimony and a
7   vague record of a single workplace altercation, the ALJ appropriately weighed his activities of
8   daily living in assessing his functional capacities. *Cf. Morgan v. Apfel*, 169 F.3d 595, 600 (9th
9   Cir. 1999) (noting that the claimant's ability to fix meals, do laundry, work in the yard, and
10  occasionally care for his friend's child was evidence of the claimant's ability to work).
11        Plaintiff also argues that the ALJ failed to provide specific and legitimate reasons for
12  discounting the opinion of the consultative medical examiner, Dr. Malone. ECF No. 11-1 at 10.
13  Under the revised social security regulations, examining medical opinions are no longer entitled to
14  the deference that they enjoyed under the prior regulations' "physician hierarchy." *See Wood v.*
15  *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consequently, an ALJ is no longer required to
16  provide "specific and legitimate" reasons for rejecting a treating opinion. *Id*. "The decision to
17  discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.
18        In lieu of the "physician hierarchy," *Wood*, 32 F.4th at 792, the current regulations provide
19  factors for an ALJ to consider in evaluating each medical opinion's persuasiveness:
20  (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the
21  provider's specialization; and (5) other factors, such as "familiarity with the other evidence in the
22  claim or an understanding of our disability program's policies and evidentiary requirements." 20
23  C.F.R. §§ 404.1520c(a), (c)(1)-(5). While all factors must be considered, "supportability" and
24  "consistency" are the primary considerations. 20 C.F.R. § 404.1520c(b)(2). "Supportability
25  means the extent to which a medical source supports the medical opinion by explaining the
26  'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R.
27  § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . .
28  with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792

1   (quoting 20 C.F.R. § 404.1520c(c)(2)).

2       Dr. Malone opined that plaintiff's ability to perform simple and repetitive tasks was unimpaired but that he otherwise had several "moderate to significant" impairments: performing detailed and complex tasks, maintaining regular attendance, performing work on a consistent basis, accepting instructions from supervisors, interacting with coworkers, and handling stress in a competitive work environment. AR 350. The ALJ considered the factors above and determined that Dr. Malone's ultimate opinions should be given only partial weight. He noted that her opinions lacked support, since they were based on a "one-time exam" and only one treatment record—plaintiff's "telephone encounter with Kaiser on January 24, 2019." AR 27. He identified several findings from Dr. Malone's evaluation that were inconsistent with her ultimate opinion, such as that plaintiff "made good eye contact, was alert and fully oriented, had intact judgment and thought processes, had fair insight, and had adequate memory and fund of knowledge." AR 349. His conclusion is supported by the opinion of a state agency medical consultant who found that Dr. Malone's opinion "appears to be an overstatement of [plaintiff's] functional limitations" and is unsupported by either her own findings or the totality of the evidence. AR 95. The ALJ did not err in weighing the persuasiveness of Dr. Malone's opinion.

    Finally, the Commissioner highlights the ALJ's finding that plaintiff's mental impairments do not satisfy the twelve-month duration requirement, and he argues that plaintiff's failure to address this finding should weigh dispositively against any finding of error. ECF No. 12 at 11 (citing AR 26). Disability is the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); *see* 20 C.F.R. § 404.1509; *Roberts v. Shalala*, 66 F.3d 179, 182-83 (9th Cir. 1995). The evidence of plaintiff's mental impairments spans from the January 2019 altercation to the June 2019 consultative exam—a period of less than six months.[2] In the June 2019 examination, Dr. Malone

---

[2] The record contains some evidence that plaintiff's mental impairments began earlier. The consultative examiner stated that plaintiff reported symptoms beginning as early as fourteen years prior, AR 347, and a Kaiser record indicates diagnoses of depression, anxiety, and unspecified adjustment disorders in 2012 and 2014, AR 340. However, plaintiff worked at the substantial

7

opined that plaintiff's prognosis was "fair," suggesting that she did not believe his symptoms would persist. AR 350. As explained *supra*, his September 2020 hearing testimony provided little, if any, support for a finding that he still had severe mental impairments. *See* AR 50 (testifying that his anxiety and depression are "not too bad" and that he has "pretty much got ['the stress'] under control"). Plaintiff bears the burden of showing disabling mental impairments for at least twelve months, and he cannot discharge that burden with an absence of contrary evidence. *See Roberts*, 66 F.3d at 182-83 (holding that seven months of affirmative evidence that the claimant met the weight requirement for disabling obesity did not satisfy duration requirement even though there was no evidence that her weight had subsequently dropped). Thus, even if the ALJ should have accorded greater weight to Dr. Malone, the absence of evidence to satisfy the duration requirement is reason alone to uphold the ALJ's decision.

Accordingly, the court hereby orders that:

1. the Commissioner's motion for summary judgment, ECF No. 12, is granted;
2. plaintiff's motion for summary judgment, ECF No. 11, is denied;
3. the decision of the Commissioner of Social Security is affirmed; and
4. the Clerk of Court is directed to enter judgment in the Commissioner's favor and against plaintiff.

IT IS SO ORDERED.

Dated:   February 28, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

---

gainful activity level until January 2019 and does not allege that his mental impairment symptoms were severe prior to the alleged onset date. *Cf. Barnhart v. Walton*, 535 U.S. 212, 222-23 (2002) (holding that the "'12 month' duration requirements apply to both the 'impairment' and the 'inability' to work requirements").